IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

NIKITA N. ROBINSON,

        Plaintiff,        Civil Action No.
                                      3:14-CV-0308 (MAD/DEP)

    v.

OUR LADY OF LOURDES MEMORIAL
HOSPITAL, INC.,

        Defendant,

---

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

NIKITA N. ROBINSON, *Pro se*
P.O. Box 3270
Binghamton, NY 13902

FOR DEFENDANTS:

[NONE]


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT, RECOMMENDATION, AND ORDER

Plaintiff Nikita N. Robinson has commenced this action against her former employee, Our Lady of Lourdes Memorial Hospital Inc. ("Lourdes"), alleging discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12,101 *et seq.*; and 42 U.S.C. § 1983, and requests leave to proceed in the action *in forma pauperis* ("IFP").[1] For the reasons set forth below, I am granting plaintiff's IFP application, but recommend that her complaint be dismissed, with leave to replead.

I.  BACKGROUND

From her complaint, it appears that Robinson was employed at one time by defendant Lourdes, although her complaint does not disclose either the date on which that employment began or the precise position she held. *See generally* Dkt. No. 1. Plaintiff alleges that, during the course of her employment, she was exposed to unlawful harassment, including at least one racial remark by an emergency room physician, and that her complaints to management and human resources personnel at

---

[1] Because "Nikita" is a gender-neutral name, and because it is not clear from the complaint whether plaintiff is a male or female, the court has used the female pronoun throughout this report. If the court is mistaken regarding plaintiff's sex, it apologizes for any confusion.

2

Lourdes were unavailing. *Id.* at 8-13. According to the complaint, plaintiff's employment at Lourdes was involuntarily terminated on May 15, 2013. *Id.* at 13. Plaintiff was not provided a specific reason for the termination, although one Lourdes administrator indicated that plaintiff's lack of availability for work was among the reasons for the decision. *Id.* Plaintiff alleges that she had previously requested an accommodation to her schedule, under the ADA, due to her attention deficit hyperactivity disorder ("ADHD"). *Id.* at 13, 22, 25.

In July 2011, a co-worker commented on plaintiff's ADHD in front of patients, visitors, and staff. Dkt. No. 1 at 25. Robinson reported the harassment to her supervisor, but was told that there was nothing she could do in the situation in light of confidentiality requirements concerning disclosure of medical conditions. *Id.*

In or about October 2011, plaintiff sustained a work-related injury of an unspecified nature. Dkt. No. 1 at 25. Plaintiff's request to be assigned to a light duty position, as an accommodation for her injury, was denied, and she was advised to apply for short-term disability leave. *Id.* Plaintiff maintains that other employees at Lourdes with similar injuries were accommodated and allowed to work in light duty positions. *Id.*

Plaintiff alleges that in or about April 2013, she requested an

3

accommodation from Lourdes. Dkt. No. 1 at 25. Liberally construed, plaintiff alleges that she requested her hours be reduced due to her ADHD, which she contends is a disability under the ADA. *Id.* Karen Roeske, the Director of Women's and Children's at Lourdes, denied plaintiff's request, and informed her that she "had two choices, work the hours or find another job." *Id.*

On May 20, 2013, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against defendant Lourdes, alleging discrimination.[2] Dkt. No. 1 at 4, 27. Plaintiff received a notice of right to sue letter from the EEOC on December 24, 2013. *Id.* at 4.

## II. DISCUSSION

### A. Application to Proceed IFP

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. §§ 1914(a). A court is authorized, however, to permit a litigant to

---

[2] It appears that plaintiff also complained to the New York State Division of Human Rights ("NYSDHR"). Dkt. No. 1 at 4, 27. According to the letter plaintiff received from the EEOC, it adopted findings of the state agency, suggesting that the NYSDHR conducted an investigation into the matter. *Id.* Plaintiff's complaint, however, does not disclose either the nature of her administrative complaint to the EEOC or NYSDHR (and specifically whether it is based on race, disability, or both), or the result of the NYSDHR's investigation. *See generally id.*

proceed IFP if it determines that she is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).[3] In this instance, plaintiff's IFP application discloses that, while she is currently employed on a part-time basis at Victoria's Secret Stores, LLC, and also receiving unemployment benefits, those amounts are fairly minimal and plaintiff has extensive liabilities, including student loans in excess of $100,000. Dkt. No. 2. Because I conclude that plaintiff meets the requirements for IFP status, her application for leave to proceed IFP is granted.[4]

    B.    <u>Sufficiency of Plaintiff's Complaint</u>

        1.    <u>Standard of Review</u>

Because I have found that plaintiff meets the financial criteria for commencing this action IFP, I must next consider the sufficiency of the claims set forth in her complaint in light of 28 U.S.C. § 1915(e). Section

---

[3] The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of New York*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[4] Plaintiff is reminded that, although her IFP application has been granted, she will still be required to pay fees that she incurs in this action, including copying and/or witness fees.

1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).  However, the court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed.  *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).  "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face

of the complaint.'" *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

2. Analysis

i. Plaintiff's Section 1983 Claim

In her complaint, plaintiff purports to include a cause of action under 42 U.S.C. § 1983.[5] Dkt. No. 1 at 6, 16-20. That section "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). It "'is not itself a source of substantive rights[,] . . . but merely provides 'a method for vindicating federal rights elsewhere conferred[.]'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In order to state a claim pursuant to section 1983, a plaintiff must allege "(1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

---

[5] Plaintiff's complaint is comprised of three distinct portions, each beginning with the form complaint applicable to the respective cause of action asserted. Dkt. No. 1. The first alleges discrimination, harassment and retaliation on the basis of race and color, in violation of Title VII. *Id.* at 1-15. The second asserts a claim under 42 U.S.C. § 1983. *Id.* at 16-20. In the third, claims under the ADA are set forth. *Id.* at 21-27.

State action is an essential element of any section 1983 claim. *Gentile v. Republic Tobacco Co.*, No. 95-CV-1500, 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (McAvoy, J.)). To survive scrutiny under section 1915(e) where a plaintiff has asserted a section 1983 claim, the complaint must allege facts that plausibly suggest state action on the part of the named defendants. *See DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 311 (2d Cir.1975), *modified on other grounds by DeMatteis v. Eastman Kodak Co.*, 520 F.2d 409 (2d Cir. 1975), ("A private party violates [section] 1983 only to the extent its conduct involves state action."); *see also Wilson v. King*, No. 08-CV-0509, 2008 WL 2096593, at *1 (N.D.N.Y. May 16, 2008) (Sharpe, J.).

In this case, plaintiff's complaint fails to allege any facts plausibly suggesting a nexus between the State of New York and the challenged actions of defendant Lourdes, which does not appear to be affiliated with any municipality, thus warranting dismissal of her section 1983 for failure to demonstrate state action. *See, e.g., Commodari v. Long Island Univ.*, 62 F. App'x 28, 30 (2d Cir. 2003) (affirming district court's dismissal of the plaintiff's section 1983 action because he "failed to allege any facts establishing a nexus between his termination by [the defendant] and any

10

state action").

### ii. Plaintiff's ADA Claim

The ADA prohibits, *inter alia*, discrimination in employment on the basis of disability. 42 U.S.C. § 12112(a).[6] Discrimination is defined to include the failure of an employer to make a reasonable accommodation for an employee's physical or mental impairments. 42 U.S.C. § 12112(b)(5); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000).

As a threshold matter, to state a cognizable ADA claim, a plaintiff must allege facts plausibly suggesting that she is disabled, within the meaning of that Act. *Chille v. United Airlines*, 192 F. Supp. 2d 27, 29 (W.D.N.Y. 2001). Generally, the ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual[.]" 42 U.S.C. § 12102(1)(A); *see also Parada v. Banco Industrial De Venezuela*, --- F.3d ----, ----, 2014 WL 1202959, at *3 (2d Cir.

---

[6] That section provides, in pertinent part, that

> [n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

11

Mar. 25, 2014). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "[A]n impairment 'substantially limits' a major life activity if the impaired person is 'significantly restricted as to the condition, manner or duration under which she can perform the activity." *Parada*, --- F.3d at ----, 2014 WL 1202959, at *3 (citing 29 C.F.R. § 1630.2(j)(1)(ii)) (quotation marks and alterations omitted); *accord*, *Murphy v. Bd. of Educ. of Rochester City School Dist.*, 273 F. Supp. 2d 292, 315 (W.D.N.Y. 2003).

To support her ADA claim, plaintiff alleges that she suffers from ADHD. Dkt. No. 1 at 22. Her complaint, however, provides no specifics including, significantly, how that condition limits or restricts any major life activity. *Id.* at 13, 25. Plaintiff's complaint also alludes to a "work-related injury" that allegedly interfered with her ability to perform in her employment, but, again, the complaint lacks any specifics. *Id.* at 25.

"[A] plaintiff diagnosed with ADHD may have a mental impairment within the meaning of the [ADA,] [b]ut that impairment must also limit a major life activity to a substantial degree." *Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d 141, 155 (1st Cir. 1998) (quotation marks and citations

12

omitted). The question of whether a condition qualifies as a disability within the definition set forth in the ADA presents "a fact-specific inquiry."[7] *Parada*, --- F.3d at ----, 2014 WL 1202959, at *3; *Bercovitch*, 133 F.3d at 155.

In this case, plaintiff's complaint is devoid of any factual allegations plausibly suggesting that her ADHD presents a substantial limitation to one or more major life activities. The mere incantation that plaintiff is disabled because she suffers from ADHD is insufficient to demonstrate the existence of a plausible ADA claim. Accordingly, I recommend that her ADA claim be dismissed.[8]

---

[7] The courts that have confronted the question of whether ADHD substantially limits a major life activity have reached varied results. *See Ferrell v. Howard Univ.,* No. 98-CV-1009, 1999 WL 1581759, at *3 (D. D.C. Dec. 2, 1999) ("Courts are divided on the issue of whether ADHD is a disability under the ADA."). Several have concluded that, while a plaintiff's ADHD (or attention deficit disorder ("ADD")) qualified as an impairment under the ADA, the plaintiff did not demonstrate substantial interference with one or more life activities. *See, e.g., Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 506-07 (7th Cir. 1998); *Brown v. Bd. of Trustees, Sealy Independent Sch. Dist.,* 871 F. Supp. 2d 581, 605 (S.D. Tex. 2012); *DeMar v. Car-Freshener Corp.*, 49 F. Supp. 2d 84, 89 (N.D.N.Y. 1999) (McAvoy, J.); *Price v. Nat'l Bd. of Med. Examiners,* 966 F. Supp. 419, 427 (S.D. W. Va. 1997).

[8] There are other deficiencies in plaintiff's ADA claim, as well. For example, because plaintiff does not particularize, in her complaint, she requested to defendant Lourdes regarding a reasonable accommodation, the court is unable to gauge whether she stated a plausible failure-to-accommodate claim. Moreover, there are no facts alleged in the complaint that plausibly suggest the alleged discrimination and harassment by defendant was based on her alleged disability.

### iii. Plaintiff's Title VII Claim

Title VII prohibits employers from, *inter alia*, discriminating against employees on the basis of race and color. 42 U.S.C. § 2000e-2; *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Title VII can be violated not only through disparate treatment, but also through the existence of a hostile work environment.[9] *Harris*, 510 U.S. at 21. A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* Whether the conduct at issue is sufficiently severe or pervasive is evaluated objectively. *Id.*

In this case, plaintiff's complaint fails to state a cognizable Title VII claim for two reasons. First, plaintiff fails to allege that she is African American or may otherwise be considered part of a protected class for purposes of Title VII. Second, although it is explicitly alleged that a physician made a derogatory remark about black people, there are no other allegations that suggest the harassment plaintiff allegedly endured was because of her race. An isolated derogatory remark (and one that is

---

[9] Title VII can also be violated by a facially neutral policy, which, in practice, has a disparate impact on a protected class of workers. *United States v. Brennan*, 650 F.3d 65, 90 (2d Cir. 2011). There does not appear to be any disparate impact claim contained within plaintiff's complaint.

14

not directed at plaintiff) does not create an objectively hostile or abusive work environment under Title VII.[10] *See Dixon v. Int'l Federation of Accountants*, 416 F. App'x 107, 110 (2d Cir. 2011) ("We have long held that stray comments of this variety do not create an inference of discrimination."). Because plaintiff has failed to allege sufficient facts plausibly suggesting that the conduct described in the complaint was advanced against plaintiff due to her race, I recommend that the Title VII claim be dismissed.

    C.    <u>Whether to Permit Amendment</u>

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could

---

[10] In any event, plaintiff has failed to allege that this incident regarding the emergency room physician is part of a continuous series of conduct. Thus, this single incident appears to fall outside of the 300-day limitation period preceding the filing of plaintiff's administrative complaint to the NYSDHR on May 20, 2013. *See Matthews v. Corning Inc.*, 737 F. Supp. 2d 133, 135 (W.D.N.Y. 2010) ("Where a plaintiff fails to file an administrative charge within 300 days of the complained-of actions, the plaintiff is barred from thereafter initiating a lawsuit in federal court based upon those actions." (citing, *inter alia*, 42 U.S.C. § 2000e-5)).

15

"not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy").

In this case, in light of her *pro se* status, I recommend that plaintiff be afforded the opportunity to amend her complaint in this action to correct the deficiencies identified above. In the event plaintiff chooses to file an amended complaint, she is advised that the law in this circuit provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *see also Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in her amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of each of the named defendants that allegedly deprived plaintiff of her constitutional rights in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass*, 790 F.2d

16

at 263. Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

IV. <u>SUMMARY AND RECOMMENDATION</u>

From a review of plaintiff's application it appears that she qualifies for IFP status. Her complaint, however, though containing a certain modicum of detail, fails to allege critical facts demonstrating plausible claims of violation of section1983, the ADA, and Title VII. Accordingly, it is hereby

ORDERED that plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is GRANTED; and it is further hereby respectfully

RECOMMENDED that plaintiff's complaint in this action be dismissed in all respects, with leave to file an amended complaint within thirty days of the date of any order adopting this report and recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: May 8, 2014
Syracuse, New York

David E. Peebles
U.S. Magistrate Judge